IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH W. FERDERBAR, Administrator of the Estate of Linda Ferderbar, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF ALLEGHENY, NORTHWEST REGIONAL COMMUNICATIONS, ALLEGHENY COUNTY 911, f/k/a NORTHWEST REGIONAL COMMUNICATIONS, DANIEL NUSSBAUM, DANIELLE TUSH, BRIAN CRAIG, LEONARD DEUTSCH, RYAN GING, SUSAN ZURCHER and PHILLIP CESTRA,<br><br>Defendants. | Civil Action No. 05-1518 |

MEMORANDUM OPINION

I

In this civil action, plaintiff, Joseph W. Ferderbar, Administrator of the Estate of Linda Ferderbar, deceased, seeks damages from defendants, County of Allegheny ("the County"), Northwest Regional Communications ("NRC"), Allegheny County 911, Daniel Nussbaum ("Nussbaum"), Danielle Tush ("Tush"), Brian Craig ("Craig"), Leonard Deutsch ("Deutsch"), Ryan Ging ("Ging"), Susan Zurcher ("Zurcher") and Phillip Cestra ("Cestra"), under 42 U.S.C. § 1983. In addition, plaintiff seeks damages from NRC and the individual defendants under

Pennsylvania's wrongful death and survival statutes, 42 Pa.C.S.A. §§ 8301 and 8302, respectively.

Presently before the Court are the motions of NRC and the individual defendants to dismiss plaintiff's claims pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, for a more definite statement under Fed.R.Civ.P. 12(e). For the reasons set forth below, the motions of NRC and the individual defendants to dismiss the Section 1983 claims asserted in plaintiff's complaint based on the bar of the statute of limitations will be granted. With respect to the remaining state law claims in plaintiff's complaint, the Court declines to exercise supplemental jurisdiction over such claims under 28 U.S.C. § 1367(c)(3), and the claims will be transferred to state court pursuant to 42 Pa.C.S.A. § 5103.[1]

## II

In summary, plaintiff's complaint alleges the following facts:

Plaintiff is the natural father and surviving parent of the decedent, Linda Ferderbar. The County is a political subdivision of the Commonwealth of Pennsylvania. NRC is a Pennsylvania corporation which, at all relevant times, operated an emergency 911 call center ("the 911 Call Center"). Allegheny County 911, formerly known as NRC, is a political subdivision of the

---

[1] On November 23, 2005, after the individual defendants' motion to dismiss was filed, the County filed a Motion for Stay or for an Enlargement of Time to File Responsive Pleading, asserting that the complaint does not assert a viable Section 1983 claim against the County if the individual defendants' motion to dismiss the Section 1983 claim against them is granted. Plaintiff did not oppose the County's motion, and, on January 12, 2006, the Court granted the motion to stay and denied the motion for an enlargement of time in which to file a responsive pleading as moot. In light of the Court's conclusion that the Section 1983 claims asserted in the complaint are time-barred, the Order accompanying this Memorandum Opinion will lift the stay granted to the County and enter judgment in favor of all defendants and against plaintiff on the Section 1983 claims.

Commonwealth of Pennsylvania. At all relevant times, Nussbaum was the Communications Director of the 911 Call Center, and Tush, Craig, Deutsch, Ging, Zurcher and Cestra were employed by the 911 Call Center as dispatchers.

On October 12, 2003, Michael Michalski ("Michalski"), who also was employed as a dispatcher by the 911 Call Center, used his position as a dispatcher to gain unauthorized access to information concerning the whereabouts of his former girlfriend, Gretchen Ferderbar, who was the decedent's sister. Nussbaum learned of Michalski's improper action and placed Michalski on a deferred, one-week suspension to take effect on October 27, 2003. On October 26, 2003, the day before the suspension was to take effect, Michalski again utilized the 911 Call Center's computer network and databases to gain unauthorized access to personal information regarding Gretchen Ferderbar.

On the evening of October 28, 2003 and during the early morning hours of October 29, 2003, while on suspension, Michalski made numerous telephone calls to the 911 Call Center and spoke with Tush and Craig. During those telephone calls, Michalski requested information to assist him in locating Gretchen Ferderbar. Tush and Craig actively and intentionally assisted Michalski with knowledge that they were accessing unauthorized personal information having no relationship to their employment as dispatchers for the 911 Call Center. At all relevant times, defendants were aware that the relationship between Michalski and Gretchen Ferderbar had recently ended; that Michalski was distraught over this fact; and that Michalski's distress was the reason he accessed the unauthorized information which resulted in his suspension.

On October 29, 2003, Nussbaum learned of Michalski's continued unauthorized access of personal information regarding Gretchen Ferderbar through the 911 Call Center and terminated

his employment. At the time of Michalski's termination, Nussbaum received information that Michalski was likely to engage in acts of violence against Gretchen Ferderbar and members of her household. Despite this information, Nussbaum failed to take any action to protect Gretchen Ferderbar or members of her household.

On October 29, 2003, Michalski contacted dispatchers at the 911 Call Center, including Tush, Craig, Deutsch, Ging, Zurcher and Cestra, to explain the circumstances of his termination. During this contact, Michalski also stated that he had nothing left to live for and that Gretchen Ferderbar and members of her household would pay for putting him in his present situation. Despite this contact by Michalski, none of the dispatchers made any effort to warn Gretchen Ferderbar or members of her household of the imminent danger posed by Michalski to their health and safety.

On October 29, 2003, Michalski used a handgun to shoot plaintiff's decedent, Linda Ferderbar, her sister, Gretchen Ferderbar, and Gretchen Ferderbar's then current boyfriend, Mark Phillips. Plaintiff's decedent, Linda Ferderbar, died of injuries sustained in the shooting on November 3, 2003.

### III

A motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of a complaint. Powell v. Ridge, 189 F.3d 387, 394 (3d Cir.1999). In deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true the facts pleaded in the complaint and any reasonable inferences derived from those facts. Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir.2000). In addition, the court is to construe the complaint in the light most favorable to the plaintiff. Weston v. Pennsylvania, 251 F.3d 420, 425 (3d Cir. 2001).

However, the court is not required to accept as true legal conclusions or unwarranted factual inferences. Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co., 113 F.3d 405, 417 (3d Cir.1997).

IV

Section 1983 Claims

In Counts One and Two of the complaint, plaintiff asserts Section 1983 claims against defendants,[2] alleging that defendants' actions violated the right of plaintiff's decedent to due process and equal protection under the Fourteenth Amendment and resulted in a seizure of plaintiff's decedent in violation of the Fourth Amendment.[3] NRC and the individual defendants contend that the Section 1983 claims in this case accrued on October 29, 2003, the date on which plaintiff's decedent was shot by Michalski, and that because the complaint in this case was not filed until November 2, 2005, the Section 1983 claims are time-barred under the applicable two-year statute of limitations.[4] After consideration, the Court agrees.

---

[2] Count One asserts a Section 1983 claim against the County, NRC and Allegheny County 911, and Count Two asserts a Section 1983 claim against the individual defendants.

[3] For purposes of their motions to dismiss, NRC and the individual defendants assume, as they must, the truth of plaintiff's allegation that they were state actors acting under color of state law at the time of the events alleged in the complaint. They do not, however, admit this fact. (Doc. No. 5, p. 5, Doc. No. 18, p. 6).

[4] While Fed.R.Civ.P. 8(c), which governs the pleading of affirmative defenses, indicates that a statute of limitations defense cannot be used in the context of a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), an exception is made where the complaint facially shows non-compliance with a limitations period and the affirmative defense clearly appears on the face of the pleading. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.1 (3d Cir.1994)(citations omitted).

5

Plaintiff agrees with NRC and the individual defendants that a two-year limitations period applies to the Section 1983 claims in this case. However, plaintiff does not agree with NRC and the individual defendants as to the date on which the Section 1983 claims accrued. Plaintiff maintains that the Section 1983 claims did not accrue until November 3, 2003, when his decedent, Linda Ferderbar, died from injuries sustained in the October 29, 2003 shooting. As a result, plaintiff contends that the filing of the complaint on November 2, 2005 was within the two-year period of limitations. To support this argument, plaintiff analogizes the Section 1983 claims in this case to wrongful death claims and asserts that "[u]nder Pennsylvania law, a claim for damages brought as the result of death of a decedent must be brought within two years of the date of *death*." (Emphasis in original). (Doc. No. 9, p. 5).

As noted by NRC and the individual defendants, plaintiff's argument regarding the statute of limitations applicable to the Section 1983 claims in this case ignores controlling Supreme Court and Third Circuit case law. (Doc. No. 14, pp. 2-5). Specifically, since the decision of the Supreme Court in Wilson v. Garcia, 471 U.S. 261 (1985), the statute of limitations applicable to Section 1983 claims is the statute of limitations for personal injury actions in the state in which the Section 1983 action is brought, not the statute of limitations for the most analogous claim in the state where the Section 1983 action is brought. *See* City of Rancho Palos Verdes v. Abrams, 544 U.S. 113 (2005)("[O]ur decision in Wilson [] expressly rejected the proposition that the limitations period for a § 1983 claim depends on the nature of the underlying right being

6

asserted.... We concluded instead that 42 U.S.C. § 1988 is 'a directive to select, in each State, the one most appropriate statute of limitations for *all* § 1983 claims.'").[5]

Moreover, it is well established that federal law, rather than state law, governs the accrual of Section 1983 claims, and that "the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir.1998), *quoting*, Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir.1991). A review of plaintiff's complaint clearly establishes that the facts upon which the Section 1983 claims in this case are predicated all occurred on or before October 29, 2003, the date on which plaintiff's decedent was shot by Michalski. Thus, the Section 1983 claims accrued no later than October 29, 2003.[6] Under the circumstances, the

---

[5] *See also* Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir.1998)("In actions under 42 U.S.C. § 1983, federal courts apply the state's statute of limitations for personal injury.... Thus, because Pennsylvania's statute of limitations for personal injury is two years, ... Sameric's due process claims are subject to a two-year statute of limitations."); Smith v. City of Pittsburgh, 764 F.2d 188 (3d Cir.1985)("In Wilson v. Garcia, the Supreme Court ... characterized all § 1983 actions uniformly as personal injury actions and applied to all § 1983 claims the state statute of limitations governing personal injury actions.").

[6] *See* Coleman v. Morall, 64 Fed.Appx. 116, 119 (10th Cir.2003) ("[B]ecause the relevant injury in a civil rights action is the violation of a constitutional right, it would be analytically incorrect to link accrual of a cause of action under § 1983 to a plaintiff's knowledge concerning the extent of the harm the constitutional violation might have caused."); Goodhand v. United States, 40 F.3d 209, 215 (7th Cir. 1994)("The statute of limitations begins to run upon the discovery of the injury, even if the full extent of the injury is not discovered until much later.... This is a general principle of limitations law, not an idiosyncratic feature of the statute of limitations in the Federal Tort Claims Act.... Were it not for this rule, the statute of limitations might be extended indefinitely – perhaps even to death, since until then it is always possible for the plaintiff's injury to worsen.").

motions of NRC and the individual defendants to dismiss such claims as time-barred will be granted.[7]

State Law Claims

Counts Three and Four of plaintiff's complaint, asserting claims against NRC and the individual defendants under Pennsylvania law for wrongful death and survival, respectively, were brought pursuant to the Court's supplemental jurisdiction, under 28 U.S.C. § 1367(a), over claims "that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Subsection (c)(3) of Section 1367 permits a district court to decline to exercise supplemental jurisdiction over a claim or claims if "the district court has dismissed all claims over which it has original jurisdiction," and, after consideration, the Court will do so in this case. However, pursuant to 42 Pa.C.S.A. § 5103, the Court will transfer plaintiff's wrongful death and survival claims to state court where NRC and the individual defendants may pursue, in an

---

[7]In light of the Court's conclusion that the Section 1983 claims in this case are time-barred, the Court need not address the additional arguments made in support of the dismissal of the Section 1983 claims, *i.e.*, plaintiff has failed to state constitutionally cognizable claims under the Fourth and Fourteenth Amendments and the individual defendants are entitled to qualified immunity.

appropriate motion, the arguments raised in support of the dismissal of such claims for failure to state a claim under Fed.R.Civ.P. 12(b)(6).[8]

An order follows.

*signature*
Arthur J. Schwab
United States District Judge
for
William L. Standish
United States District Judge

Date: April **7**, 2006

---

[8]NRC and the individual defendants assert that the state law claims in plaintiff's complaint are barred by Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa.C.S.A. §§ 8541 *et seq.*, and/or the six-month statute of limitations set forth in 42 Pa.C.S.A. § 5522(b)(1), which relates to an action against any officer of any government unit for anything done in the execution of his office. With respect to the survival claim, it is asserted that this claim also is barred by the two-year statute of limitations set forth in 42 Pa.C.S.A. § 5524(2).